UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

LVN Property Management, LLC    Case No. 6:15-bk-08001-KSJ
                                Chapter 11
    Debtor.
_____/

## HURSYND 14, LLC'S MOTION
## TO DISMISS CASE FOR BAD FAITH FILING

### Expedited Relief Requested

Secured Creditor, HURSYND 14, LLC (hereinafter "**Secured Creditor**" or "**Hursynd**"), by and through its undersigned counsel, pursuant to 11 U.S.C. §§ 1112(b)(1) and 362(d)(3), and Rule 9014, Federal Rules of Bankruptcy Procedure, move this Court for dismissal of the above-referenced Chapter 11 Bankruptcy Case for cause and in support thereof state as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b) (2).

### INTRODUCTION

2.    On or about September 21, 2015, Debtor, LVN Property Management, LLC ("**Debtor**" or "**LVN**") filed for relief under Chapter 11 of the Bankruptcy Code on the day of the foreclosure sale which was scheduled to take place on the Debtor's primary assets, which is real property and personal property located in Osceola County, Florida.

3.      Hursynd believes that LVN filed its *third* bankruptcy solely for the purpose of seeking to prevent Hursynd from going forward with its state court foreclosure action.

## BACKGROUND

### The Loan Documents

4.      On or about November 18, 2005, the Borrowers, executed and delivered to Secured Creditor's successor-in-interest a Promissory Note in favor of CNL Bank in the principal amount of Two Million and 00/100 Dollars ($2,000,000.00) (the "**Original Note**"). The Original Note was subsequently modified four separate times. The Original Note, as modified is collectively referred to as the **"Note."** A true and correct copy of the Note is attached as **Composite Exhibit "A."**

5.      On or about November 18, 2005, as security for the Original Note, as modified, Borrowers executed and delivered to the Bank a Mortgage and Absolute Assignment of Leases, which mortgage was recorded on December 5, 2005, in O.R. Book 2984, Page 1002 of the Public Records of Osceola County, Florida (the "**Mortgage**"). The Mortgage also provided that Borrowers consent to the appointment of a receiver upon application by the Bank. A true and correct copy of the Mortgage is attached as **Exhibit "B."**

6.      On or about December 5, 2005, the Bank perfected its interest in certain personal property collateral by filing a UCC-1 Financing Statement in Official Records Book 2984, Page 1010, and a Continuation recorded in Official Records Book 4046, Page 2118, each of the Public Records of Osceola County. On or about November 28, 2005, the Bank perfected its interest in certain personal property collateral (collectively, the "Personal Property") by filing a UCC-1 Financing Statement in Florida Secured Transaction Registry, Document No. 200501241815. A true

and correct copy of the UCC-1 is attached hereto as **Composite Exhibit "C."** A description of the Personal Property is included in **Composition Exhibit "C."**

7. On or about November 18, 2005, Nguyen, individually, in return for valuable consideration, executed and delivered to the Bank an Unconditional Guaranty (the "**Mary Nguyen Guaranty**"). Pursuant to the terms of Mary Nguyen Guaranty, Nguyen guaranteed to the Bank the prompt and full payment and performance of the indebtedness and obligations of Borrower to the Bank. A true and correct copy of the Mary Nguyen Guaranty is attached hereto as **Exhibit "D."**

8. On or about April 4, 2007, as security for the Original Note, as modified, Nguyen executed and delivered to the Bank a Collateral Mortgage, recorded on April 17, 2007, in O.R. Book 3458, Page 1205, in the Public Records of Osceola County, Florida (the "**Nguyen Collateral Mortgage**"). Like the Sunflower/LMSE Mortgage, the Nguyen Collateral Mortgage contains a consent to the appointment of receiver without notice.

9. Sometime before January 2010, the Borrowers, including the Debtor, defaulted under the Note by failing to make the monthly installment payments required under the Note and by failing to pay the real estate taxes as they became due.

10. On or about January 27, 2010, the Borrowers, including the debtor, requested the Bank to forbear on accelerating the Note and foreclosing on the mortgage. So the Borrowers and Guarantors executed and delivered to the Bank that certain Forbearance Agreement (the "**2010 Forbearance Agreement**"). A true and correct copy of the 2010 Forbearance Agreement is attached hereto as **Exhibit "E."**

11. As additional security for the loan made by the Bank to Borrowers, on or about May 5, 2010, MAI, in return for valuable consideration, executed and delivered to the Bank a Commercial

Guaranty (the "**MAI Guaranty**"). Pursuant to the terms of MAI Guaranty, MAI guaranteed to the Bank the prompt and full payment and performance of the indebtedness and obligations of Borrower to the Bank. A true and correct copy of the MAI Guaranty is attached hereto as **Exhibit "F."**

12. On or about May 5, 2010, Lake Cecile, in return for valuable consideration, executed and delivered to the Bank a Commercial Guaranty (the "**Lake Cecile Guaranty**"). Pursuant to the terms of Lake Cecile Guaranty, Lake Cecile guaranteed to the Bank the prompt and full payment and performance of the indebtedness and obligations of Borrower to the Bank. A true and correct copy of the Lake Cecile Guaranty is attached hereto as **Exhibit "G."**

13. On or about July 31, 2010, Borrowers and Guarantors executed and delivered to the Bank a Loan agreement, which Loan Agreement establish requirements for the Borrowers to follow in order to insure that income from the Debtor's hotel would be properly used to pay off the obligations of the Note. (the "**Loan Agreement**"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "H."**

14. On or about July 31, 2010, in return for valuable consideration, Borrowers executed and delivered to the Bank that certain Security Agreement Deposit Account (the "**Tax Escrow Account**") pledging certain deposit accounts for the obligations of the Borrowers, which is attached as **Exhibit "I."**

15. On or about July 31, 2010, in return for valuable consideration, Borrowers executed an delivered to Secured Creditors that certain Security Agreement Deposit Account (the "**Rent Deposit Account**") pledging certain deposit accounts for the obligations of the Borrower, which is attached as **Exhibit "J."**

16.  The documents described in paragraphs 4-15 above are collectively referred to as the "**Loan Documents**".

17.  The Borrowers, including the Debtor, have defaulted under the terms of the Loan Documents and the Forbearance Agreement.

18.  Under the Loan Documents as stated above, the Borrowers were obligated to make monthly payments to CNL Bank. Beginning February 15, 2011, and for several months thereafter, the Borrower failed to make the required payments as they became due.

19.  The failure of Borrower and Guarantors to deliver the monthly payments constitutes a default under the Loan Documents; and the failure of Borrower and Guarantors to pay the loan in full by the Maturity Date constitutes a default under the Loan Documents (collectively the "**Default**").

20.  To date, the Borrower and Guarantors have failed to cure the Default on its obligation under the Loan Documents, and has otherwise defaulted. Pursuant to the terms of the Loan Documents, all applicable cure periods have expired.

21.  On or about May 21, 2013, CNL Bank assigned the notes, mortgages and Loan Documents to Hursynd (the "**Assignment**").

22.  Hursynd, now the payee, owner, holder and lender of the Original Note, as modified, and the mortgagee, has declared the full amount payable under the Loan Documents to be due.

### The State Court Foreclosure Action

23.  On or about April 19, 2011, Hursynd's successor-in-interest, CNL Bank or "CNL", instituted a foreclosure action against the Debtor, LVN Property Management, LLC, its principal managing member, Hung Thinh Nguyen, Thu Thi Le, Phu Van Le, (collectively the "**Borrowers**"); Mary Mai Nguyen ("**Nguyen**"), Mai & Associates, Inc. ("**MAI**"), Lake Cecile Management, LLC

("**Lake Cecile**"), (collectively the "**Guarantors**"); and other defendants in the Circuit Court of the Ninth Judicial Circuit, Osceola County, Florida, case number 2011-CA-001160-MF (the "**Foreclosure Action**"), seeking to foreclose its security interest in certain real and personal property, seeking damages for breach of guaranty, turnover of rents and the appointment of a receiver. On May 5, 2011, CNL Bank filed an Amended Foreclosure Complaint (hereinafter the "**Foreclosure Complaint**").

24.     The eight-count Foreclosure Complaint included the following causes of action: Count 1- Breach of Note; Count II- Foreclosure of Real Property; Count III- Foreclosure of Security Interest in Personal Property; Count IV- Breach of Guaranty against Nguyen; Count V- Breach of Guaranty against MAI; Count VI- Breach of Guaranty against Lake Cecile; Count VII- Turnover of Rents; Count VIII- Request for Appointment of Receiver. A copy of the Foreclosure Complaint is attached as **Exhibit "K."**

## Debtor's First Chapter 11 Bankruptcy Case

25.     On or about November 29, 2011, in order to prevent the foreclosure in the State Court Case, Borrower filed for relief under Chapter 11 of the Code, in this Court, case number 6:11-bk-17871 (the "**First Bankruptcy Case**").

26.     On October 19, 2012, Bankruptcy Court in the Debtor's First Bankruptcy Case entered an Order Confirming the Debtor's Plan of Reorganization.

27.     A component of the First Bankruptcy Case included a Forbearance Agreement whereby Debtor was required to pay off the Debt by the Maturity Date. A copy of the LVN Forbearance Agreement is attached as **Exhibit "L."**

28. Attached to and incorporated into the terms of the Confirmation Order, the Borrower/Debtor and Secured Creditor entered into a Forbearance Agreement. Paragraph 19 of the Forbearance Agreement specifically stated that "*In the event that the Borrower [LVN Property Management, LLC] files a subsequent bankruptcy case or is the subject of any future bankruptcy filing, the Borrower consents to Lender's relief from the automatic stay, for the purpose of allowing Lender to pursue its in rem remedies against the Property. Borrower irrevocably consents to any motion filed by the Lender seeking relief from the automatic stay pursuant to Section 362 of Title 11 and shall not contest or object to any such motion by the Lender. The Borrower acknowledges that it has received good and valuable consideration, as evidence by this forbearance, in exchange for its consent to relief from the automatic stay. Borrower further acknowledges that this paragraph was a material inducement with respect to Lender's entry into this Agreement.*"

29. The Forbearance Agreements expired on June 30, 2014, the same date as the maturity date of the promissory note that was the subject of the Foreclosure Action.

30. Paragraph 20 of the Forbearance Agreements contains a waiver of defenses and a stipulation to the entry of an ex parte final judgment of foreclosure upon termination of the Forbearance Agreements unless the loans had previously been paid in full. Debtor defaulted under the Confirmation Order and Forbearance Agreement by failing to pay off the Debt owed to Secured Creditor in Full.

## 2014 State Court Foreclosure Judgment

31. On or about December 11, 2014, after the Debtor defaulted under the Forbearance Agreement and the Loan matured, the Court in the Foreclosure Action entered a Final Judgment as to Count I (Breach of Note) and Count II (Foreclosure of Real Property) in favor of Hursynd in the

amount of $2,416,031.49 (the "**Judgment**").  The foreclosure sale was originally scheduled for January 21, 2015 at 11:00 a.m.  A true and correct copy of the Judgment is attached as **Exhibit "M."**

32. On December 11, 2014, Secured Creditor filed in the Foreclosure Action a Verified Motion for Appointment of a Receiver without Notice (the "**Motion for Receiver**").

33. On or December 11, 2014, the court in the Foreclosure Action entered an Order Appointing Receiver, whereby Jan Gautam of Interessant Hotels & Resort Management ("**Mr. Gautam" or "Receiver**") was appointed Receiver of that certain real and personal property pledged to Hursynd and located in Osceola County Florida.

34. Due to the Debtor's failure to Comply with the Receiver Order, on or about December 18, 2014, Hursynd was forced to file a Joint Motion for Order Directing Clerk to Enter Writs of Possession for the Mortgaged Property.

35. On or about December 18, 2014, the court in the Foreclosure Action entered the Order Granting Motion for Writs of Possession.

36. As mention above, days before the scheduled January 21, 2015 foreclosure sale was scheduled to take place, LVN filed for its *second* bankruptcy relief.

### Debtor's Second 2015 Chapter 11 Bankruptcy Case

37. On or about January 19, 2015, Borrower filed for relief under Chapter 11 of the Code, in this Court, case number 6:15-bk-00447 (the "**Second Bankruptcy Case**").

38. In the Second Bankruptcy Case, Hursynd filed a Motion for Relief from the Automatic Stay.

39. In the Second Bankruptcy Case, Hursynd filed a Motion to Dismiss Case for Bad Faith.

40.     This Court held a Final Evidentiary Hearing on the Motion to Dismiss and the Motion for Relief from Stay on or about April 10, 2015 (the "Motion to Dismiss Trial").

41.     At the Motion to Dismiss Trial, this Court held that the Debtor had filed its Second Bankruptcy Case in bad faith and for the purposes of hindering Hursynd from continuing its foreclosure case.

42.     On April 28, 2015, the Court entered an Order Denying Confirmation and Dismissing Chapter 11 Bankruptcy Case. Also, the automatic stay was terminated for all purposes as to Hursynd 14, LLC (the "Dismissal Order"). A copy of the Dismissal Order is attached as **Exhibit "N."**

### The Third Rescheduled Foreclosure Sale

43.     Subsequent to the dismissal of the LVN Second Bankruptcy Case, on or about May 6, 2015, Hursynd filed in the State Court Foreclosure Case its Motion to Reset Foreclosure Sale and to Direct Defendant, LVN to Turnover DIP Funds to Receiver (the "**Motion to Reset Foreclosure Sale**"). A copy of the Motion to Reset Foreclosure Sale is attached as **Exhibit "O."**

44.     On July 20, 2015, the State Court entered an Order Granting Motion to Reset Foreclosure Sale (the "**Order Resetting Foreclosure Sale**"). In pertinent part, the Order reset the foreclosure sale for the sale of LVN's primary assets, including its real and personal property for **September 21, 2015 at 11:00 a.m. (the "Third Foreclosure Sale Date")**. A true and correct copy of the Order is attached hereto as **Exhibit "P."**

### The Debtor's Third Bankruptcy Case

45.     As mentioned above, on September 21, 2015, *one hour before* the Third Foreclosure Sale Date, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code.

46. The Debtor's operations is located at 8010 Firenze Blvd., Orlando, Florida 32836.

47. The Debtor, which is a single member Florida limited liability company, owns a 50% interest in a 126-room motel (the "**Motel**") located at 4900 W. Irlo Bronson Memorial Highway, Kissimmee, Florida. The Motel is leased by Lake Cecile Properties, LLC. The tenant operates the Motel under the name "Lake Cecile Inn and Suites" ("**The Lake Cecile Inn and Suites**").

48. Currently, an Official Committee of Unsecured Creditors has not been appointed as of the filing of this Motion.

49. Hursynd is the only secured creditor, whose collateral includes real property and personal property located in Osceola County, Florida, the Primary Assets of the Debtor, including:

   a. Real property owned by Debtor, located at 4840 W. Irlo Bronson Memorial Highway, Kissimmee, Florida 34746, currently being operated as the Palm Lakefront Resort and Hostel, pursuant to the Collateral Second Mortgage and Security Agreement recorded March 24, 2010, in O.R. Book 3964 at Page 980 in the Public Records of Osceola County, Florida (the "**Palm Hostel**"); and

   b. All personal property owned by Debtor, Sunflower, and non-debtor, LMSE.

50. The Debtor filed its bankruptcy case to stop the foreclosure sale.

## ARGUMENT

**A. The LVN Property Management, LLC Bankruptcy Case Was Filed in Bad Faith and Should be Dismissed Pursuant to Bankruptcy Code § 1112(b)**

51. It is well-settled in the Eleventh Circuit that a bankruptcy case filed in bad faith constitutes "cause" for dismissal of the case under Bankruptcy Code § 112(b). *In re: Phoenix Piccadilly Ltd.*, 849 F. 2d 1393 (11th Cir. 1988); *In re: Albany Partners, Ltd.*, 749 F. 2d 670 (11th Cir. 1984).

52. As such, Hursynd moves to dismiss this case pursuant to Section 1112(b)(1) as a bad faith filing. In the Eleventh Circuit, courts review the *Piccadilly* factors in analyzing whether a Chapter 11 case was filed in bad faith. *Piccadilly Ltd.,* 849 F. 2d at 1394-95.

53. Under *Piccadilly*, the Court considers the following non-exhaustive list of factors to determine whether a case was filed in bad faith:

> (1) the debtor has only one asset, the property at issue;
>
> (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors;
>
> (3) the debtor has few employees;
>
> (4) the property is subject to a foreclosure action as a result of arrearages on the debt;
>
> (5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and
>
> (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*See Piccadilly*, Ltd. 849 F. 2d at 1394-5. Judicial findings of bad faith are predicated on a mix of some, but not all, of these circumstantial factors of bad faith. *Id.*

54. It is also well-settled that, if an evaluation of these factors supports a finding of bad faith, then the debtor's case must be dismissed, irrespective of whether the debtor has equity in its property and the potential for a successful reorganization:

> Because the bankruptcy court found that a bad faith filing had occurred, it properly did not change the consequences of that finding simply because of the debtor's possible equity in the property or potential for successful reorganization. We reject the debtor's argument that the bankruptcy court cannot ever dismiss a case for bad faith if there is equity in the property because the presence of equity indicates the potential for a successful reorganization. Rather, as stated in *In re Natural Land*, "[t]he taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any

proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." 825 F.2d at 298.

Accordingly, the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith. *See Piccadilly*, 849 F.2d at 1395. *See also In re Lotus Investments, Inc.*, 16 B.R. 592, 594 (Bank. S.D. Fla. 1981) (secured creditor demonstrated bad faith justifying case dismissal and stay relief despite the fact that there was equity in the debtor's property).

55.  The debtor has the burden of proof to show that its bankruptcy petition was filed in good faith. *See Lotus Investments*, 16 B.R. at 595; *In re RAD Properties, Inc.*, 84 B.R. 827, 829 (Bank. M.D. Fla. 1988).

56.  Each of the Piccadilly factors set out in paragraph 43, above, demonstrate that the Debtor filed in bad faith:

> (1) The Debtor's only assets are the collateral of Hursynd
>
> (2) The Debtor's only secured creditor is Hursynd
>
> (3) The Debtor has no unsecured debt while having significant secured debt;
>
> (4) The Debtor has no equity in the Properties
>
> (5) The Debtor's only assets are subject to foreclosure in the State Court Action;
>
> (6) The Debtor has no employees
>
> (7) Debtor's financial problems involve a dispute between Debtor and Hursynd which can be resolved in the State Court Foreclosure Action;
>
> (8) Debtor's filing of its **THIRD** Chapter 11 Petition on the day of the Third Scheduled Foreclosure Sale in the State Court Foreclosure Action evidences an intent to delay or frustrate the legitimate efforts of Hursynd to enforce its rights;
>
> (9) The Debtor failed to even file any schedules with its initial petition

(10) This is the Debtor's third bankruptcy case, with its most recent case being dismissed less than 6 months ago.

57. More specifically, the Debtor filed its Chapter 11 case in bad faith. *See In re Phoenix Piccadilly, Ltd.*, 849 F. 2d 1393, 1394 (11th Cir. 1988) (stating, "[a]n automatic stay may be terminated for "cause" pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith"); *see also In re Stulley*, 108 B.R. 174, 178 (Bankr. S.D. Ohio 1989) (finding that cause existed under Section 362(d)(1) based on the debtor's filing its petition for the sole purpose of frustrating a creditor's foreclosure efforts, its bad faith bankruptcy filing, and the creditor's lack of adequate protection.

**B. The LVN Property Management, LLC has No Hope of Reorganizing**

58. Hursynd is the Debtor's sole secured creditor, and essentially the Debtor's primary creditor, other than an alleged unsecured debt owed to the Debtor's principal, Mary Nguyen, who is an insider of the Debtor. Without Hursynd's consent, it is impossible for Debtor to confirm a plan of reorganization, as there is no other secured creditor which could even conceivably be used as a cram-down class. For these reasons, the Debtor has no reasonable hope of reorganizing.

59. The Debtor has no equity security interest in the subject property for the benefit of the unsecured creditors of the estate and no cash with which to fund a Chapter 11 Plan. As such, the Debtor has no reasonable hope of reorganizing

60. For property to be "necessary for an effective reorganization" it must be established that an effective reorganization is realistically possible. *In re Albany*, 749 F.2d 670, 673 n.7 (11th Cir. 1984). It is not sufficient that the property is indispensable to the debtor's survival. Id. (citing *In re Discount Wallpaper Center, Inc.*, 19 B.R. 221,222 (Bank. M.D. Fla. 1982)). Further, property is

not necessary for an effective reorganization under Section 362(d) (2) when the property is not generating any income. See *In re Monica Road Associates*, 147 B.R. 385 (Bankr.E.D.Va. 1992) (holding that relief from stay is granted pursuant to Section 362(d)(2) when the debtor owned nothing but undeveloped land that generated expenses but no income); In re L & M Properties, Inc., 102 B.R. 481, 485 (Bankr.E.D.Va. 1989) (stating that "[t]o determine that there can be an effective reorganization of the debtor's business, the debtor must persuade the Court that the operation of the business will generate sufficient income to pay debt service."). For these reasons, the Debtor has no reasonable hope of reorganizing

    WHEREFORE the Secured Creditor, Hursynd 14, LLC, respectfully request that this Court enter an Order dismissing the Debtor's Chapter 11 case, barring the Debtor from any future bankruptcy filings for five (5) years, and to grant such other and further relief as this Court deems appropriate.

    Dated: October 14, 2015.

    Respectfully submitted,

/s/ Katie Brinson Hinton
Katie Brinson Hinton
Florida Bar No. 0022367
Katie@mcintyrefirm.com
McIntyre Thanasides Bringgold
  Elliott Grimaldi & Guito, P.A.
501 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
(813) 899-6059
(813) 899-6069 (Facsimile)
*Attorney for Hursynd 14, LLC*

## **CERTIFICATE OF SERVICE**

      **I HEREBY CERTIFY** that a true and correct copy of the foregoing *Hursynd 14 LLC's Motion to Dismiss Case for Bad Faith Filing* was served on October 14, 2015, upon the registered users of the Courts CM/ECF system and or via U.S. Mail to:

**Office of the United States Trustee**, Attn: Timothy S. Laffredi, 400 West Washington Street, Ste. 1100, Orlando, FL 32801

**Debtor,** LVN Property Management, LLC, 8010 Firenze Blvd., Orlando, FL 32836-8752

**Attorney for Debtor**, Jeffrey Ainsworth, Esq., Branson Law, PLLC, 1501 E. Concord Street, Orlando, FL 32803-5411

**Attorney for Secured Creditors**, Hursynd 14, LLC, c/o Katie Brinson Hinton, Esq., McIntyre Thanasides, et al, 501 E. Kennedy Blvd., Ste. 1900, Tampa, FL 33602

**Receiver,** Janendra Gautam, P.O. Box 593834, Orlando, FL 32859, Email: jan@ihrmc.com

**All Creditors and Local Rule 1007-2 Parties in Interest List**

                                    /s/Katie Brinson Hinton
                                    Attorney
                                    FBN: 0022367